**In re ESTATE OF KEELER.**

[Cite as *In re Estate of Keeler* (1996), 111 Ohio App.3d 657.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APF09–1255.

Decided June 13, 1996.

*Mark Sladoje* and *Bruce W. Powell,* for appellant Estate of Anne R. Keeler.

*Robert R. Reed Co., L.P.A.,* and *Robert R. Reed,* for appellee Tax Commissioner.

STRAUSBAUGH, Judge.

This matter is before this court upon the appeal of the Estate of Anne R. Keeler ("appellant") from the September 1, 1995 decision and entry of the Franklin County Court of Common Pleas, Probate Division, wherein the court found that the estate owes interest in the amount of $3,866.44.

The facts of this case are as follows: The decedent, Anne R. Keeler, died on April 6, 1983. The administration of her estate began on April 11, 1983 and terminated with the filing of the seventh, final, and distributive account ("fiduciary's account") on July 19, 1991. The Ohio tax return was filed on March 6, 1984, and showed a tax liability of $25,506.98. At the time that the return was filed, appellant paid $19,474.48, leaving a balance of $6,032.50 due.

On November 10, 1986, the parties entered into a "Federal Agreement" which states, in pertinent part:

" * * * [T]he Ohio estate tax liability as to all issues and valuations on which Ohio and Federal law correspond shall be fixed and determined in accordance with the final determination of such issues and valuations for Federal estate tax purposes, provided that the same valuation date has been properly elected and allowed on both the Ohio and Federal Estate Tax Returns." [1]

On November 19, 1990, the federal estate tax closing letter was issued. Prior to the federal estate tax closing letter, appellee issued the following:

(1) A Certificate of Determination, dated June 15, 1988, for a "DEFICIENCY ASSESSMENT INTEREST FROM 01/06/84" of $1,910.86 [2];

(2) A letter dated June 22, 1988, notably *a week after* the certificate of determination listed above, wherein appellee states that "OUR RECORDS INDICATE THAT *OHIO ESTATE TAX IN THE AMOUNT OF $6,032.50* HAS NOT BEEN PAID. INTEREST ON THE TAX BEGAN TO ACCRUE NINE

---

1. Unfortunately, the record does not contain a copy of appellant's federal tax return, although other items in the record indicate that the Ohio return uses a value for the "gross estate" which may be higher ($622,078.09) than the gross estate value used on the federal tax return ($618,888). The trial court may wish to consider this discrepancy in determining the "bottom line," *i.e.*, the amount of Ohio taxes due. Clearly if Line 1 of the Ohio return, pertaining to gross estate is lower, then the amount of taxes due would also be lower.

2. R.C. 5731.23 provides that interest begins to accrue on unpaid estate tax nine months after the decedent's death, which was April 6, 1983. Accordingly, beginning on *January 6, 1984*, interest would begin to accrue. This lends credence to appellant's argument, insofar as the certificate of determination issued June 15, 1988 describes the $1,910.86 figure as a "DEFICIENCY ASSESSMENT INTEREST FROM *01/06/84*."

MONTHS AFTER DECEDENT'S DEATH." [3]   (Emphasis added.)

(3) A letter dated August 11, 1988, notably after all of the above letters and certificates of determination, which states "OUR RECORDS INDICATE THAT *OHIO ESTATE TAX IN THE AMOUNT OF $1,910.86* HAS NOT BEEN PAID. INTEREST ON THE TAX BEGAN TO ACCRUE NINE MONTHS AFTER DECEDENT'S DEATH."   (Emphasis added.)

(4) A Certificate of Determination, dated July 5, 1989, which lists the total amount of tax unpaid as $7,943.36, and the total amount assessed as $27,417.84.[4]

It is appellant's contention that none of the certificates of determination were final, because the values, debts, and expenses were not finalized under the Federal Agreement until November 19, 1990, which is the date of the Federal Estate Tax Closing Letter.   However, no objections or exceptions to the certificates of determination were filed by appellant.   See R.C. 5731.27(B) and 5731.30.   Appellee further points out that appellant failed to comply with the language of the Federal Agreement as follows:

"Taxpayer expressly agrees that he shall within sixty days after the final determination of the Federal Estate Tax Liability furnish to the Tax Commissioner a copy of the Federal Closing Letter (Form L–154), pages one and three of the Form 706 and, if there are any adjustments, the Federal Examiner's final report."

Appellant conceded this point at oral argument.   (However, in appellant's memorandum contra, paragraph five, dated October 24, 1994, appellant states that the IRS communicated audit changes to the Ohio Tax Commissioner who made a redetermination of Ohio estate tax in accordance with such audit changes.)

On October 19, 1989, appellant paid $8,049.07, which apparently includes the $6,032.50 and the $1,910.86 figures, with an additional $105.71 in interest.[5]   The account was settled and approved by the trial court on September 5, 1991.

---

**3.**   This court remains unclear as to why this letter would not set forth the total tax due, *i.e.*, the $7,943.36 ($6,032.50 + $1,910.86), assuming, arguendo, that $7,943.36 is the total amount of tax due.   In that way, the taxpayer would be advised of the total tax due, and would have some idea of the base number that was being used to determine interest.

**4.**   It should be noted that the $27,417.84 figure does not coincide with the "Tax Due" figure on the Ohio tax return ($25,506.98).   Appellee has simply alleged that the $27,417.84 figure is the total due, without explaining why its figure differs from the Ohio tax return.   It is appellant's contention that the $27,417.84 represents the $25,506.98 in taxes plus an additional $1,910.86 for interest.

**5.**   Appellee claims that, after receiving payment of $8,049.07 in October 1989, it sent notice to appellant's attorney on October 15, 1989 setting forth the additional taxes that were due at

On October 27, 1993, special counsel for the Ohio Department of Taxation, appellee, filed a motion to reopen the estate and vacate the order settling the account. An amended motion to reopen and vacate settlement order was filed on December 29, 1993. On January 26, 1994, a hearing was held, although no testimony was taken at this hearing. Instead, the referee heard arguments of counsel and admitted into evidence the appellee's Exhibit No. 1, which was a certified copy of a judgment against the estate for $7,943.36. The referee recommended that the fiduciary's account be set aside and that the estate be reopened.

The court adopted the recommendation of the referee and vacated the settlement order on August 22, 1994.

Thereafter, on August 26, 1994, the appellee filed exceptions to the fiduciary's account, alleging nonpayment of interest. The exceptions were set for a hearing on September 27, 1994, but, again, no testimony was taken at this hearing. The referee did, however, receive appellant's Exhibits Nos. 1 through 5 into evidence. These exhibits include the Federal Agreement, the IRS letter of March 18, 1987, the last two payments of federal estate tax, the federal estate tax refund that was allowed by the IRS, and the closing letter issued by the IRS on November 19, 1990.

On May 3, 1995, the referee issued his report finding that the estate had paid $8,049.07 and that this amount represented the amount of both taxes ($6,032.50) and interest ($1,910.86 + $105.71) then due. Thus, the referee found that the $1,910.86 truly represented accrued interest on the $6,032.50 of taxes that remained unpaid. However, in its decision and entry dated September 1, 1995, the trial court overruled the findings and recommendations of the referee.

The trial court found that the amount paid to the state of Ohio of $8,049.07 represented $7,943.36 for unpaid tax and $105.71 for interest. Clearly, the trial court was convinced that the $1,910.86 was additional *tax*, as opposed to interest on tax. Thus, the trial court found that a remaining balance of $3,866.44, which represented interest that had accrued on the unpaid tax of $7,943.36, remained unpaid and therefore entered judgment against appellant. Appellant appealed to this court and asserts the following assignments of error:

"Assignment No. 1: The trial court erred and abused its discretion by vacating the order settling the final and distributive account more than three years after approval and settlement without good cause where movant fialed [*sic*] to perform a statutory duty. ·

---

that point in time. However, the record does not contain this alleged notice of October 15, 1989.

"Assignment No. 2: The trial court erred and abused its discretion by overruling the report and findings of the referee by finding that interest was due and unpaid without requiring the Tax Commissioner to issue a Certificate of Determination as to the amount of tax, interest or penalty due, if any.

"Assignment No. 3: The court erred in not accepting the referee's findings of fact and conclusions of law that the taxpayer 'must' rely on the Certificate of Determination issued on July 5, 1989 as the final liability for estate tax, including interest and penalty, as of that date.

"Assignment No. 4: The court erred in not allowing the estate to offset the overpayment of estate tax against the estate tax interest liability pursuant to the doctrine of 'equitable recoupment.' "

Initially this court must determine if the trial court erred or abused its discretion in granting appellee's motion to vacate the settlement order and reopen the estate. Appellant argues that the trial court erred and abused its discretion in vacating the settlement order because appellee failed to demonstrate good cause for purposes of R.C. 2109.35(C).

When appellee moved to vacate the settlement order, R.C. 2109.35(C) provided for the vacating of such an order and stated:

"The order may be vacated for good cause shown, other than fraud, upon motion of any person affected by the order who was a party to the proceeding in which the order was made solely by reason of his having been served by publication in a newspaper in accordance with section 2109.33 of the Revised Code, if the motion is filed within one year after that person acquires knowledge of the proceeding and, in any event, within three years after the order is made. The person shall establish to the satisfaction of the court that he had no knowledge of the proceeding in time to appear in it."

Accordingly, if appellee was (1) a party to the proceeding solely by reason of being served by publication in accordance with R.C. 2109.33, (2) timely filed its motion to vacate the settlement of this fiduciary's account pursuant to R.C. 2109.35(C), and (3) demonstrated good cause, other than fraud, the probate court could vacate the settlement of the fiduciary's account.

Additionally, appellee has the burden to establish that it had no knowledge of the proceeding in time to appear in it. *Id.* It should be noted that R.C. 2109.35(C) provides that the court *may* vacate such an order. Thus, the statute does *not* require the court to vacate such an order, even if all of the above requirements have been satisfied. *In re Cain* (Oct. 5, 1995), Franklin App. Nos. 95APF01–105 and 95APF02–220, unreported, 1995 WL 584395.

As to the first element of R.C. 2109.35(C), this court notes that appellee's motion to vacate and amended motion to vacate simply state that appellee did not receive actual notice of the hearing on the fiduciary's seventh account. As to the second element, appellee argues that it filed its motion within three years of the settlement order. However, the plain language of the statute requires that such a motion be filed within one year after one acquires knowledge of the proceeding and, in any event, within three years after the order is made. The statute also requires that appellee establish to the satisfaction of the court that it had no knowledge of the proceeding in time to appear in it.

■ The record does not reveal when appellee acquired actual knowledge of the proceeding, and the referee's report and trial court entry do not discuss or determine appellee's actual knowledge. R.C. 2109.35(C) conditions vacation· on the movant's filing the motion within one year after acquiring actual knowledge and on the movant's demonstrating it had no knowledge of the proceeding in time to appear. While the referee, and thus the trial court, addressed the three-year period of R.C. 2109.35(C), he failed to address the one-year period set forth in that section. Thus, the trial court erred in vacating the settlement order pursuant to R.C. 2109.35(C).

As for the third element, which requires that "good cause" be demonstrated, appellee's initial motion to reopen did not assert that good cause existed for the reopening of the estate. Despite appellee's failure to assert good cause in the motion, the referee permitted appellee to amend its motion to reopen so that appellee would have the opportunity to demonstrate good cause.

Appellant objected, but appellant's objections were overruled and the referee proceeded to hold a hearing so that appellee could demonstrate whether good cause existed for this order to be vacated. This court has no transcript of this "hearing," although the parties agree that no testimony was taken and that the only evidence submitted at the hearing were various exhibits, which are contained in the record.

■ Clearly, good cause exists to vacate a settlement order if the probate court approves the final and distributive account without the knowledge of an existing claim. See *In re Cain, supra; Mathe v. Fowler* (1983), 13 Ohio App.3d 273, 13 OBR 337, 469 N.E.2d 89; *Watts v. Watts* (1882), 38 Ohio St. 480. As noted by the court in *Mathe, supra,* good cause exists when there is a mistake or error by the probate court or when there is a mistake in the proceeding of a court of record in matters of law or fact. *Id.* at 274, 13 OBR at 338–339, 469 N.E.2d at 91–92.

Here, appellee argues that at the time of settlement the probate court had no knowledge of appellant's alleged additional tax liability. If the probate court did

not consider a pending liability in its prior proceeding, good cause exists to vacate the settlement. See *Mathe, supra,* 13 Ohio App.3d at 274, 13 OBR at 338–339, 469 N.E.2d at 91–92. Nonetheless, appellant's first assignment of error is well taken, because of our disposition of the timeliness issue under R.C. 2109.35(C). We reverse the trial court's vacation of the settlement order and remand the cause to the trial court to consider the evidence and determine the timeliness of appellee's motion.

The crucial issue set forth in appellant's second and third assignments of error is whether $3,866.44 more in interest was due, or whether appellant had already met its tax obligations in full.

In recommending that the settlement order be vacated, the referee determined that the tax liability of $6,032.50 was determined within the three-year limitation established by R.C. 5731.38.

R.C. 5731.38 provides:

"No liability for the payment of taxes levied under Chapter 5731. of the Revised Code, including all interest and penalties thereon, may be determined as to the return required to be filed under section 5731.21 of the Revised Code, subsequent to three years after such return is filed * * *.

"In the event there is litigation pending at the expiration of such three-year period for the determination or collection of any such tax, including interest or penalties thereon, the liability for the payment thereof continues until the expiration of one year after final determination of such litigation."

This statute is relevant insofar as the $1,910.86 at issue, and the letter which advised appellant's attorney that a deficiency assessment of $1,910.86 was due, was dated June 15, 1988. Thus, more than three years had expired since the Ohio estate return was filed on March 6, 1984. As of March 6, 1987, appellee could determine no additional tax liability. R.C. 5731.38. Essentially, the referee found that since the $6,032.50 in taxes was determined within that three years, any interest that subsequently accrued *on that $6,032.50* would be appropriate. Appellant does not contest this finding.

What appellant contests is that in June 1988, an additional deficiency assessment of $1,910.86, which appellee claims constitutes *additional* taxes, was assessed three years beyond the filing of the Ohio return. If this $1,910.86 constitutes additional taxes, it was arguably untimely for purposes of R.C. 5731.38. If this $1,910.86 is truly just interest on the $6,032.50 deficiency, determined within the R.C. 5731.38 period, then it is timely.

However, in the instant action, the parties entered into a "Federal Agreement." Essentially this agreement provides that the parties can amend the Ohio return to reflect the figures contained in the federal return, once the federal return is completed.

Where, pursuant to R.C. 5731.26(C), a taxpayer enters into an agreement to have Ohio estate taxes determined on the basis of the final determination of federal estate taxes, the taxpayer is estopped from asserting the statute of limitations contained in R.C. 5731.38, where such final determination of federal estate tax extends beyond the statute of limitations set forth in R.C. 5731.38. See *In re Estate of McKinnon* (1983), 13 Ohio App.3d 305, 13 OBR 381, 469 N.E.2d 852. Thus, because the parties entered into a Federal Agreement pursuant to R.C. 5731.26(C), the statute of limitations set forth in R.C. 5731.38 was tolled, in a sense, until the final determination of federal estate tax was completed. The record contains a closing letter dated November 19, 1990, wherein, the final tax liability for federal purposes is set forth as $67,440.41. A review of the record also demonstrates that appellant was given a refund of $27,504 for federal tax purposes.

As to the issue of whether or not the $1,910.86 reflects interest or taxes, this court finds that the record supports the positions asserted by both parties. The letter of June 15, 1988, setting forth the deficiency assessment of $1,910.86, is clear that this amount pertains to taxes. There is also nothing to indicate that appellant objected or took exception to this assessment within sixty days. Clearly, this letter sets forth appellant's ability to object within sixty days, but apparently appellant did not do so.

However, it should be noted that the record in this case does not explain why $1,910.86, an additional tax, was assessed. Appellee simply asserts that this $1,910.86 figure constitutes additional tax. Appellee has not explained why appellant's tax liability increased after appellant filed the Ohio return. Nor has appellee offered any reason for why the Ohio return is inaccurate. Clearly, the Ohio return's figure of $25,506.98 does not comport with the appellee's figure of $27,417.84. Appellee has not offered any reason for this discrepancy. Moreover, appellee failed to object to the Ohio estate tax return. If the Ohio estate tax return was wrong, and if the $25,506.98 figure was inaccurate and should have read $27,417.84, then appellee should have challenged the return.

The Certificate of Determination of final Ohio estate tax liability for a taxable estate, which is contained in the record and was filed on July 5, 1989, indicates the amount assessed as being $27,417.84. This figure is open to two interpretations. Clearly, this $27,417.84 figure is exactly $1,910.86 higher than the $25,-506.98 figure that is located on the "TAX DUE" line of the Ohio estate tax return herein. Thus, if one begins with the $27,417.84 figure (which is arguably inflated by $1,910.86) and subtracts the $19,474.48 that was admittedly paid, the result is the $7,943.36 figure, asserted by appellee as the total unpaid tax. Again, the labelling of these figures as "AMOUNT ASSESSED" and "TOTAL AMOUNT OF TAX UNPAID" serves to support appellee's position. Again, appellant failed to object or take exception to this assessment within sixty days.

However, appellant's assertion that the $7,943.36 constituted both tax and interest is supported, in part, by the judgment entry of July 1989, which set forth the following: "Amount of judgment $7,943.36 with interest from _____, 19__ at __% per annum, and costs $_____." This judgment indicates that the total amount of the judgment is $7,943.36. If additional interest was due and owing, one would expect to see a completed journal entry, which indicated the rate of interest to be charged per year. The journal entry was not completed in this manner. Thus, the entry could be construed to read that the $7,943.36 is the total estate tax liability due, including all taxes and interest.

■ Given the state of the record, the lack of a hearing transcript, the fact that no testimony or other evidence, other than exhibits, was submitted at the hearings before the referee, and the fact that we have no federal estate tax return, even though the Federal Agreement provided that those numbers would be used to help finalize the Ohio return, this court is compelled to reverse the judgment and remand the cause for a full evidentiary hearing on the matter.

We also hold that it is proper to permit appellant to submit the final federal estate tax return for the trial court's consideration, so that the Ohio estate tax return may be amended, if necessary. This will also give appellee the opportunity to demonstrate and support the claim that the $1,910.86 is additional tax. To the extent described above, and for those reasons only, appellant's third assignment of error is sustained.

Given our disposition of appellant's third assignment of error, appellant's second assignment of error is rendered moot, and for that reason is overruled. App.R. 12(A).

With respect to appellant's fourth assignment of error, this court would note the following: If, on remand, the trial court finds that the $1,910.86 constitutes additional tax,[6] then appellee's issuance of the Certificate of Determination in June 1988 was untimely for purposes of R.C. 5731.38. However, the parties entered into a Federal Agreement, pursuant to R.C. 5731.26(C), and R.C. 5731.38 further provides that if there is litigation pending at the expiration of such three-year period for the determination or collection of any tax, then said litigation extends liability for the payment of tax, interest, and penalties until the expiration of one year after final determination of such litigation.

■ Thus, if appellee is permitted to utilize the Federal Agreement to extend the time frame in which it was permitted to bring a claim for additional taxes, it is proper to permit appellant to utilize the Federal Agreement to ensure that the

---

6. Clearly, if the trial court finds that the $1,910.86 constitutes interest on the $6,032.50, then the question of timeliness is moot. Since the assessment of $6,032.50 was timely, the $1,910.86, if treated as interest on that amount, is timely.

numbers on the federal tax return are consistent with the Ohio estate tax return. These federal figures may indeed alter the Ohio figures considerably, resulting in a refund for the appellant. Appellant, however, may not apply an equitable theory of recoupment to offset any liability. *Gen. Motors Corp. v. Limbach* (1993), 67 Ohio St.3d 90, 92–93, 616 N.E.2d 204, 206–207. Equitable principles remain inapplicable to Ohio taxation statutes. *Id.*[7] For those reasons, appellant's fourth assignment of error is overruled.

Accordingly, the first assignment of error is sustained, the second assignment of error is rendered moot and for that reason is overruled, the third assignment of error is sustained, and the fourth assignment of error is overruled. The judgment of the trial court is reversed and remanded to the Franklin County Court of Common Pleas, Probate Division, for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PEGGY BRYANT and TYACK, JJ., concur.

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, sitting by assignment.

---

7. Although *Gen. Motors Corp., supra,* was decided within the context of R.C. Chapter 5733, apparently the pronouncement on equitable recoupment was more broad in scope. Thus, this court does not find that appellant is entitled to an equitable recoupment theory. However, appellant is not necessarily precluded from filing for a refund of Ohio estate tax. See *Kroger Co. v. Limbach* (1990), 68 Ohio App.3d 330, 588 N.E.2d 261.